COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| GERARDO VASQUEZ, | | No. 08-09-00062-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 171st District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20070D00922) |
| | § | |

## O P I N I O N

Gerardo Vasquez appeals his conviction of murder. A jury found Appellant guilty and assessed his punishment at a fine of $10,000 and life imprisonment. For the reasons that follow, we affirm.

## FACTUAL SUMMARY

One evening, Ahias Blanco and his nephew went to the Cabaret, a strip club in El Paso. Appellant was also at the Cabaret with his cousin and a friend. The two groups did not know each other but at some point Appellant began arguing with someone in Blanco's group. The dispute cooled and the two groups continued to socialize. The doorman had to enter the club because Appellant and Blanco were standing in front of the stage and blocking it. They did not appear to be arguing but they were intoxicated. Around closing time, the doorman went back inside because both Appellant and Blanco had removed their shirts and were showing their tattoos. They did not appear to be arguing but both men were extremely intoxicated and the doorman threatened to throw them out of the club if they did not settle down. Soon afterwards, Blanco and his nephew, trailed by his friend, walked out of the club and into the parking lot where they stopped to talk. Appellant exited

about thirty seconds later and, after talking briefly with the group, went to the trunk of his car. He removed a 12 gauge Remington 870 Express Magnum shotgun and held it so it could be seen. Rather than leaving when he saw the shotgun, Blanco walked slowly toward Appellant while asking, "What are you going to do with that?" and saying, "Shoot me, shoot me." Appellant racked the shotgun, which was loaded with three Winchester slug rounds, and fired a single shot at Blanco who was about ten to twelve feet from him. Appellant put the gun back in the trunk and left. Blanco died as a result of a penetrating shotgun wound in the left pelvis.

A deputy sheriff saw Appellant at a truck stop about an hour after the shooting and recognized him based on the BOLO description which included a distinctive tattoo of two eyes on the back of his neck. The deputy arrested Appellant, who asked whether Blanco had died and said that he deserved it. While in the patrol car, Appellant made a number of statements including, "you f--k with the wrong person, man, . . . that's what happens," and if someone challenges him, "he knows he's f-----g with death." He also stated, "I smoked him," and said that a person should not challenge someone "full of tattoos." Appellant subsequently gave a recorded video statement in which he claimed that he shot Blanco because he kept walking towards him and challenged him. The police recovered the shotgun from the trunk of Appellant's car and found that it had one spent round and two live rounds in it.

The jury rejected Appellant's claim of self-defense and found him guilty of intentionally causing Blanco's death by shooting him with a firearm. This appeal follows.

## LEADING QUESTIONS, A COMMENT BY THE PROSECUTOR, AND FINAL ARGUMENT

In Issue One, Appellant complains of the trial court's failure to grant a mistrial after allowing

the State to engage in a pervasive pattern of leading its witnesses.[1]  He also complains about the prosecutor's final argument during guilt-innocence and a comment by the prosecutor during the punishment phase.

*Leading Questions*

The State contends that Appellant failed to preserve error with respect to most of his complaints.  Evidentiary error must be preserved by making a proper objection and securing a ruling on that objection.  TEX.R.APP.P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex.Crim.App. 2002); *Peralta v. State*, ---- S.W.3d ----, 2010 WL 4851388 at *8 (Tex.App.--El Paso 2010, no pet.). A proper objection is one that is specific and timely.  *Id*.  If the objection is sustained, the party must move for an instruction for the jury to disregard, and if the instruction is given, then the party must move for a mistrial.  *Cook v. State*, 858 S.W.2d 467, 473 (Tex.Crim.App. 1993).  When the appellant has been given all the relief he requested at trial, there is nothing to complain of on appeal.  *Cook*, 858 S.W.2d at 473.

Appellant cites in his brief to twenty-four instances during trial when the prosecutor allegedly asked leading questions.  The trial court either expressly or impliedly sustained twenty-one of those objections, overruled one, and did not rule on two other objections.

Appellant did not request a curative instruction in connection with any of the twenty-one instances where the trial court sustained his objection to a leading question nor did he request a mistrial.  Consequently, Appellant received all of the relief that he sought from the trial court and nothing is presented for our review.  With regard to the two instances where the trial court did not rule on the objections, error is not preserved.  TEX.R.CIV.P. 33.1(a)(2).

---

[1]  Issue One states:  Did the trial court err in failing to grant a mistrial after allowing leading questions by the State on material facts?

*Direct Examination of the Doorman*

We will now address the instance where the trial court overruled Appellant's objection. A leading question suggests the desired answer, instructs the witness how to answer, or puts words into the witness's mouth to be echoed back. *Tinlin v. State*, 983 S.W.2d 65, 70 (Tex.App.--Fort Worth 1998, pet. ref'd). A question is not leading simply because it can be answered "yes" or "no." *Tinlin*, 983 S.W.2d at 70. A question is impermissibly leading only when it suggests which answer, "yes" or "no," is desired. *Id*. Leading questions may not be used on the direct examination of a witness except as may be necessary to develop the testimony of the witness. TEX.R.EVID. 611(c). Thus, the rule clearly contemplates that some leading questions are acceptable at the trial court's discretion. *Wyatt v. State*, 23 S.W.3d 18, 28 (Tex.Crim.App. 2000). To establish that the trial court abused its discretion, the appellant must demonstrate that the questions resulted in undue prejudice. *Wyatt*, 23 S.W.3d at 28.

During direct examination of Cabaret's doorman, Jon Borrego, the prosecutor asked several questions about size of Appellant and Blanco:

[The prosecutor]: Okay. What were their relative sizes?

[Borrego]: The one on the right hand side, if I remember correctly, he was a pretty big individual. As compared to me he was probably 5'10", 170.

[The prosecutor]: And what was the defendant in your estimation -- of course I know you didn't have a scale. You can't --

[Borrego]: I don't know 5'10", 150. 5'6", 5'7".

[The prosecutor]: Okay. So the guy who was shot, Mr. Blanco was a tiny bit, just a little bit larger than the defendant?

[Defense counsel]: Objection, leading, Your Honor.

[The Court]: Sustained.

[The prosecutor]: Can you tell the jury, can you give us a comparison of their relative sizes?

[Borrego]: Well, between the two the individual on the right that was shot was the larger man compared to the other one.

[The prosecutor]: *By how much, by a lot or a little?* [Emphasis added].

[Defense counsel]: Object vagueness, Your Honor, and leading.

[The prosecutor]: Your Honor, it's --

[The Court]: Overruled.

[The prosecutor]: You said about ten pounds, maybe an inch?

[Borrego]: Maybe 20 pounds, he was a little bit more filled out, I guess you can say.

The prosecutor's question, "By how much, by a lot or a little?" did not put words in Borrego's mouth nor did it suggest the answer. Thus, it is not a leading question. Even if it could be considered a leading question, Appellant has failed to show that undue prejudice resulted because the witness answered in his own words and testified consistently that Blanco outweighed Appellant by twenty pounds. The trial court did not abuse its discretion by overruling the objection.

*The Prosecutor's Comment*

Appellant also complains about a comment made by the prosecutor. The record reflects that the prosecutor was introducing exhibits pursuant to a stipulation at the beginning of the punishment phase of trial when the following occurred:

[The prosecutor]: State's Exhibit 126, reflects the verdict in defendant's conviction in Cause Number 20000D02097 for three counts of aggravated assault, and this shows that the defendant, once again, was given seven years of shock probation which meant that he got down -- sent down to the Texas Department of Criminal Justice --

[Defense counsel]: Objection, Your Honor --

[The prosecutor]: For a period of time.

[Defense counsel]: Objection.

[The prosecutor]: And brought back.

[Defense counsel]: If Mr. Ferguson wants to testify you can swear him in.

[The Court]: Sustained.

[The prosecutor]: Okay, Your Honor.

[Defense counsel]: And that the jury be instructed to disregard that comment.

[The Court]: Please disregard the last statement made by Mr. Ferguson, please.

[Defense counsel]: And I make a motion for mistrial, Your Honor?

[The Court]: Denied. Go ahead, Mr. Ferguson.

[The prosecutor]: Yes, Your Honor. Show you State's Exhibit 127, defense counsel, I presume -- is this -- are you objecting to me explained [sic] what these are, Sheldon?

[Defense counsel]: No.

Appellant initially made only a general objection which is insufficient to preserve error. *See Buchanan v. State*, 207 S.W.3d 772, 775 (Tex.Crim.App. 2006). Appellant next objected to the prosecutor "testifying" about the exhibit. He did not object and could not have objected on the ground that the prosecutor was asking a leading question because no witness was on the stand at the time. To the extent Appellant has characterized this incident as part of the prosecutor's "pervasive pattern of leading questions," the claimed error is not preserved because the objection made at trial about the prosecutor testifying does not comport with the argument raised on appeal regarding leading questions. *See Santellan v. State*, 939 S.W.2d 155, 171 (Tex.Crim.App. 1997)(stating that the issue on appeal must comport with the objection made at trial).

The only preserved issue is whether the trial court abused its discretion by denying Appellant's request for a mistrial. A mistrial is an appropriate remedy in "extreme circumstances"

for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex.Crim.App. 2009); *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004). A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ocon*, 284 S.W.3d at 884; *Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999). Whether an error requires a mistrial must be determined by the particular facts of the case. *Ocon*, 284 S.W.3d at 884.

A trial court's denial of a mistrial is reviewed for an abuse of discretion. *Id.* An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Id.*; *Wead v. State*, 129 S.W.3d 126, 129 (Tex.Crim.App. 2004). The ruling must be upheld if it was within the zone of reasonable disagreement. *Id.*

The prosecutor's attempt to explain shock probation when introducing a prior conviction pursuant to the parties' stipulation was improper but it was not so prejudicial that it could not have cured by the court's instruction to disregard. The prosecutor did not finish his explanation and the prosecutor later elicited testimony from a punishment witness to explain shock probation. We presume the jury followed the trial court's instruction to disregard the prosecutor's comment. *See Wesbrook v. State*, 29 S.W.3d 103, 116, (Tex.Crim.App. 2000).

*Final Argument*

Appellant's next complaint concerns a portion of final argument in which the prosecutor commented on something which had occurred during trial. During direct examination of Detective Mike Aman, the prosecutor asked him whether he had seen the wound and how large it was. Aman had seen the wound after it had been cleaned up and he believed the wound was about one inch in diameter. The prosecutor then asked, "Or larger?" The trial court sustained Appellant's objection

to a leading question. The prosecutor then showed Aman a photograph of the body and Aman testified that the wound appeared to be two inches or two and one-half inches in diameter. During closing argument, defense counsel criticized the prosecutor for leading the witnesses, including Detective Aman, and for laughing when defense counsel objected. The prosecutor responded as follows:

> [The prosecutor]: This isn't reality that the defense is trying to bring you. They are trying to misdirect or direct your attention away from the defendant's guilt. Talking about being fair, he wants to imply that because I laughed and somehow I wasn't being fair to the defense. But remember what was going on, we had a man on the stand who says, Well, that wound was about an inch. We have a photograph that shows that's not true.
>
> I have a duty to do justice and present the truth on that stand, and if somebody says something that is not true and they are mistaken I have a duty to clarify it and clear it up. So I simply say, Could it have been larger.
>
> [Defense counsel]: Objection, Your Honor, that is a misstatement of the law. He has no duty to lead the witnesses he's put on.
>
> [The prosecutor]: I have a duty to clear up a any [sic] misstatement, Your Honor.
>
> [Defense counsel]: Not by those means.
>
> [The Court]: Overruled.

On appeal, Appellant argues that the prosecutor improperly testified to facts during final argument. He did not, however, object on this ground at trial. Because the argument on appeal does not comport with his objection, Appellant has failed to preserve error. *See Santellan*, 939 S.W.2d at 171 (stating that the issue on appeal must comport with the objection made at trial to preserve error). Issue One is overruled.

## CHARGE ERROR

In his second issue, Appellant contends that the trial court erred by refusing to submit an instruction on the lesser-included offense of aiding suicide. Appellant maintains that the lesser-

included offense was raised by evidence that Appellant shot Blanco only after he held up his hands and said, "Shoot me."

A trial court's decision to submit or deny an instruction on a lesser-included offense is reviewed for an abuse of discretion. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex.Crim.App. 2004). We utilize a two-pronged test to determine whether a charge on a lesser-included offense should be given. *McKinney v. State*, 207 S.W.3d 366, 370 (Tex.Crim.App. 2006); *Hall v. State*, 158 S.W.3d 470, 473 (Tex.Crim.App. 2005). The first step is to determine whether the lesser-included offense is included within the proof necessary to establish the offense charged. *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App. 1993). The second prong then requires an evaluation to determine whether some evidence exists that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser offense. *Mathis*, 67 S.W.3d 918, 925 (Tex.Crim.App. 2002). In other words, the evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense. *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex.Crim.App. 2000). If facts are elicited during trial that raise an issue of the lesser-included offense, and the charge is properly requested, then a charge must be given. *Ross v. State*, 861 S.W.2d 870, 877 (Tex.Crim.App. 1993)(op. on reh'g.).

Article 37.09(1) of the Code of Criminal Procedure provides that an offense is a lesser-included offense "if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX.CODE CRIM.PROC.ANN. 37.09(1)(West 2006). Texas has adopted the cognate pleadings approach to the first step of the lesser included offense analysis. *McKithan v. State*, 324 S.W.3d 582, 587 (Tex.Crim.App. 2010; *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex.Crim.App. 2009); *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex.Crim.App. 2007). The first prong is satisfied if the indictment for the greater-inclusive offense either:

1) alleges all of the elements of the lesser-included offense, or

2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced.

*Ex parte Watson*, 306 S.W.3d at 273. Both statutory elements and any descriptive averments alleged in the indictment for the greater-inclusive offense should be compared to the statutory elements of the lesser offense. *Id.* If a descriptive averment in the indictment for the greater offense is identical to an element of the lesser offense, or if an element of the lesser offense may be deduced from a descriptive averment in the indictment for the greater-inclusive offense, this should be factored into the lesser-included-offense analysis in asking whether all of the elements of the lesser offense are contained within the allegations of the greater offense. *Id.* This inquiry is a question of law. *Hall*, 225 S.W.3d at 535.

The indictment alleged three alternative means of committing murder. Paragraph A alleged that Appellant intentionally or knowingly caused the death of Blanco by shooting him with a firearm. *See* TEX.PENAL CODE ANN. § 19.02(b)(1)(West 2003). Paragraph B alleged that Appellant, with intent to cause serious bodily injury to Blanco, committed an act clearly dangerous to human life, to wit: shooting Blanco with a firearm, that caused Blanco's death. *See* TEX.PENAL CODE ANN. § 19.02(b)(2). Paragraph C alleged that Appellant committed or attempted to commit the felony offense of aggravated assault by threatening Blanco with a firearm, and while in the course of and in furtherance of the commission of aggravated assault, committed an act clearly dangerous to human life, to wit: shooting Blanco with a firearm, that caused Blanco's death. *See* TEX.PENAL CODE ANN. § 19.02(b)(3).

A person commits the offense of aiding suicide if, with the intent to promote or assist the commission of suicide by another, he aids or attempts to aid the other to commit or attempt to

commit suicide.  TEX.PENAL CODE ANN. § 22.08.  A comparison of the statutory elements and the indictment reveals that aiding suicide includes a specific intent to promote or assist the commission of another person's suicide whereas the offense of murder as charged in the indictment does not. Further, Section 22.08 has been interpreted as only encompassing conduct which indirectly contributes to another's voluntary suicide.  *Goodin v. State*, 726 S.W.2d 956, 958 (Tex.App.--Fort Worth 1987), *aff'd*, 750 S.W.2d 789 (Tex.Crim.App. 1988).  It does not include conduct which directly causes the death of another, even if that conduct is done at the deceased's request.  *Goodin*, 726 S.W.2d at 958.  The offense of murder as alleged in the indictment requires proof that Appellant caused Blanco's death by shooting him with a firearm.  Thus, the elements of aiding suicide are not established by proof of the same or less than all of the facts required to establish commission of the charged offense.  Issue Two is overruled.

## TATTOO AND GANG AFFILIATION EVIDENCE

In his final issue, Appellant argues that the trial court abused its discretion by admitting evidence of Appellant's gang affiliation and tattoos during the guilt-innocence phase of trial.

### *Preservation of Error*

To complain about error in the admission of evidence, a party must make a timely and specific objection or motion to strike.  TEX.R.APP.P. 33.1(a)(1); TEX.R.EVID. 103(a)(1); *Wilson*, 71 S.W.3d at 349.  During the guilt-innocence phase of trial, the trial court admitted a booking sheet, State's Exhibit 32, which contained a statement that Appellant had tattoos on his torso, arms, and neck. The State had initially offered an unredacted version of the booking sheet which also included a description of the tattoos, but the court sustained Appellant's Rule 403 objection and required the State to redact the description from the exhibit.  Appellant did not voice any objection to the redacted version outside the presence of the jury. Further, when the State offered the redacted version into

evidence, Appellant stated he had "no objection." By affirmatively stating he had no objection to the redacted State's Exhibit 32, Appellant waived any he complaint he had regarding its admission. *See Holmes v. State*, 248 S.W.3d 194, 196 (Tex.Crim.App. 2008)(defendant waived complaint regarding admission of crack pipe by stating "no objection" when the exhibit was offered into evidence); *Swain v. State*, 181 S.W.3d 359, 368 (Tex.Crim.App. 2005)(holding that a defendant waives any error when he affirmatively states no objection to introduction of exhibits despite earlier objections).

Appellant also contends the trial court erred in admitting State's Exhibit 122 which is Appellant's videotaped statement. During the interview, the detective questioned Appellant about the events before the shooting and why Appellant shot Blanco. In an apparent effort to learn whether the shooting was gang-related, the detective asked Appellant about his gang affiliation, and Appellant stated that he "used to be from Canuto" but he was trying to change.[2] In this same vein, the detective later questioned Appellant about showing his tattoos to Blanco in the club:

[Detective]: What tattoos were you showing?

[Appellant]: I can't remember, sir, my stomach.

[Detective]: Take off your shirt and show me. What's it say, a gangster's trip?

[Appellant]: Yeah.

[Detective]: (Inaudible) Canuto.

[Appellant]: Yeah.

[Detective]: You show look I'm with Canuto or what are you saying?

---

[2] During the punishment phase, Detective Jeffrey Gibson testified as a gang expert and photographs of Appellant's tattoos were admitted into evidence. Through investigation, Gibson had confirmed that Appellant was a member of the criminal street gang, Barrio Canuto. Gibson also testified that Appellant's tattoos reflected his membership in a gang and he explained the meaning of the tattoos.

[Appellant]: I don't know. I can't remember, sir.

[Detective]: Was he a gang member, too?

[Appellant]: He didn't say, but --

[Detective]: Okay.

[Appellant]: (Inaudible). Was he?

[Detective]: I don't know.

[Appellant]: I don't know. (Inaudible) jail man, he was a type of person because he's been in jail before and he knows that when you go in there you're probably in a gang. So he sees me all tagged up, trying to and (inaudible) that's what he was trying to do.

[Detective]: Trying to intimidate you with -- saying he is an Azteca?

[Appellant]: (Inaudible).

Prior to the admission of State's Exhibit 122, Appellant objected that the exhibit contained "reference to tattoos and gang membership which I think are character evidence" and he argued that the danger of unfair prejudice outweighed the probative value. He did not identify the particular portions of the exhibit which he found objectionable.

When an exhibit contains both admissible and inadmissible evidence, the burden is on the objecting party to specifically point out which portion of the recording is inadmissible. *Whitaker v. State*, 286 S.W.3d 355, 369 (Tex.Crim.App. 2009), *citing Hernandez v. State*, 599 S.W.2d 614, 617 (Tex.Crim.App. 1980)(op. on reh'g). A trial court is not obligated to search through an exhibit, such as a recorded statement, and segregate the admissible evidence from the inadmissible. *Whitaker*, 286 S.W.3d at 369. Appellant objected to the entire videotaped statement without identifying the specific portions to which his objection applied. Consequently, we find that Appellant did not preserve his complaint regarding State's Exhibit 122. We overrule Issue Three and affirm the judgment of the

trial court.

April 28, 2011

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)