COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| GEORGE EDWARD THERAGOOD, | | No. 08-10-00013-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 435th District Court |
| | § | |
| THE STATE OF TEXAS, | | of Montgomery County, Texas |
| | § | |
| Appellee. | | (TC # 09-09-08902-CR) |
| | § | |

## O P I N I O N

George Edward Theragood appeals his convictions of sexual assault (Counts I and II) and aggravated sexual assault (Counts III and IV). A jury found Appellant guilty of each count and assessed his punishment at a fine of $10,000 and imprisonment for twenty years on Counts I and II and a fine of $10,000 and life imprisonment on Counts III and IV. The trial court ordered the sentences to be served consecutively. For the reasons that follow, we affirm.

### FACTUAL SUMMARY

Denashia Theragood is Appellant's daughter. She began living with him and her aunt, Paula Cardell, in Houston when she was six years old. Denashia went back and forth between her parents for the next few years but she began living with him permanently when she was in the sixth grade. At that time, they lived in Conroe. Appellant was a truck driver so he was often on the road for long periods of time.

In December 2003, Denashia and her father were living in Conroe with Caroline Warren and with several other people. When Appellant was home, he slept in the same room as Denashia. Denashia recalled that when she was twelve, Appellant began making her rub his penis every night

that he was home. She never told anyone because he had told her he would get in trouble. Appellant next began putting his finger in Denashia's vagina. This abuse lasted for a few months before progressing to sexual intercourse. Denashia testified that Appellant would have intercourse with her whenever he came home from his road trips which she estimated to be 100 times or more. She did not tell because she did not have anyone she could trust or who would believe her. Denashia finally told her mother, Rosa Barrett, in December 2006 when she was fifteen years of age. Denashia's mother reported it to appropriate law enforcement authorities. A sexual assault examination was performed, and the sexual assault nurse examiner determined that although the anus and hymen were normal, this finding did not rule out sexual abuse.

Detective Tom Gannucci of the Montgomery County Sheriff's Office interviewed Appellant. Gannucci later asked another investigator in the Sheriff's Office, Mark Handler, to interview Appellant because of his skills as an interviewer. During cross-examination, defense counsel established that Appellant had denied the allegations during this interview and Gannucci initially believed him. To impeach Appellant's credibility, the State introduced a judgment showing Appellant had been convicted of failing to register as a sex offender.

Handler testified regarding his interview of Appellant. Appellant denied placing his penis in Denashia's vagina, but he admitted that he had touched her vagina while teaching her about sex. He said that he became sexually excited when he did this. Appellant told Handler that he also touched Denashia's vaginal area because he shaved her pubic hair for reasons of hygiene. Appellant became sexually excited when doing this but he was taking medication that caused erectile disfunction. He added that if he had not been on the medication, "something might have happened." Handler drew an outline of Appellant's hand and asked him to indicate which finger he used and how far he had placed it inside of the vagina. The drawing, which was admitted as State's Exhibit

4, indicates that Appellant inserted the tip of his middle finger into the vagina.

Yolanda Yvette testified during the State's case-in-chief that Appellant lived with her mother in Dallas. Yvette had been told that Appellant was her biological father but she later found out this was not true. Appellant sexually abused Yvette on many occasions when she was between the ages of six and ten. When the abuse began, Appellant made her "grind on his groin" and he would kiss her, but the abuse progressed to anal and vaginal penetration. The abuse continued even after Yvette's mother ended her relationship with Appellant because Yvette would visit with him. During these visits, Yvette slept in the same bed as Appellant and he would sexually assault her even when other people were asleep in the bed with them. Yvette recalled that Appellant sexually assaulted her on at least one occasion when Denashia's mother was in the bed with them. Yvette made an outcry and in 1994, Appellant entered a plea of no contest to aggravated sexual assault. The court placed Appellant on deferred adjudication probation for five years. Yvette, who was twenty-seven years-old at the time of trial, had not seen Appellant since she was eleven.

Several witnesses testified for the defense. Denashia's mother, Rosa Barrett, contradicted Yvette's testimony about sleeping in the same bed with Yvette and Appellant. Barrett attended the court proceedings when Appellant was indicted for sexually assaulting Yvette. She recalled from those proceedings that Appellant was required to register as a sex offender. Appellant had told her that he was not guilty and that Yvette was being manipulated by her mother to make the accusations. Barrett knew that Appellant was strict with Denashia and he punished her for making a "C" in school or talking too much on the telephone. When Denashia was fifteen, Barrett went to pick her up for the Christmas holidays and discovered that she was sharing a room with Appellant. Barrett was both surprised and concerned about this discovery. While Denashia was visiting her, Appellant called because he had found Denashia's diary and he was extremely upset and angry with her. Barrett told

Denashia that Appellant was upset with her and she would be punished when she returned home. The day after Christmas, Denashia told her mother what Appellant had been doing. Barrett immediately made a police report. Barrett denied encouraging her daughter to make up these allegations so she could live with her and she did not believe that Denashia had fabricated the accusations.

Paula Cardell testified that when Denashia lived with her, she shared a bedroom with Cardell's daughter. Appellant never spent the night at the house while Denashia lived there. There were seven people living in the three-bedroom house when Denashia first moved in, but Cardell's niece and her children later moved into the house bringing the total to fifteen residents. Cardell was aware of Appellant's 1994 conviction for aggravated sexual assault of a child but she never believed that it was true. She likewise did not believe Denashia because she was never alone with her father.

Appellant's niece, Phylunda Theragood, lived with Cardell in 2003. Denashia slept in the same bedroom as Phylunda and her children. Unlike Cardell, Phylunda testified that Appellant sometimes spent the night at Cardell's house when he returned from a trip. Phylunda did not believe Denashia's allegations.

Appellant's girlfriend, Janice Pratt, testified that she and Appellant had been together since 1999. Consistent with Phylunda's testimony, Pratt testified that Appellant sometimes spent time wherever Denashia was living, but he also stayed with her. Denashia never lived with Pratt. Pratt did not believe the allegations against Appellant.

Caroline Warren testified that Denashia moved in with her at the end of November 2003 and had her own bedroom. Appellant left his clothes in the home but he was usually on the road, and he often stayed with a friend when he returned. On cross-examination, Warren admitted that Appellant occasionally spent the night in Denashia's bedroom. Warren did not believe the

allegations.

Appellant testified against the advice of counsel. He pled no contest in 1994 to the aggravated sexual assault of Yvette for the sole reason that the law enforcement authorities were threatening to prosecute Rosa Barrett. Appellant admitted that he was convicted of failure to register as a sex offender in 1999, but he explained that his attorney told him that he had five years to register. When Appellant's deferred adjudication probation was successfully completed and the case dismissed, he thought he was no longer obligated to register.

In February of 2003, Denashia was on a break from school and wanted to travel to California with Appellant in his truck. When they were outside of Abilene, Appellant discovered that Denashia had started her menstrual period for the first time. He first called Barrett and then Cardell. Cardell explained what to purchase and instructed him how the feminine hygiene products should be used. They stopped at a truck stop and Appellant assisted Denashia in the shower by cleaning the vaginal area with a wipe, but he never touched her body with his bare hand. Rather than continuing the trip with Denashia, he drove to Houston and left Denashia with Cardell. Appellant had Denashia move to Warren's home in late November 2003 because Denashia had altered her report card. Count 4 of the indictment alleged that Appellant sexually assaulted Denashia on or about December 2, 2003. Appellant testified that he left on a trip in early October 2003 and he did not return to Houston until January 8, 2004. In March 2004, Appellant was seriously injured in an accident and he had neck surgery. Appellant stayed at Warren's house for a few days after getting out of the hospital before going to Pratt's house to recuperate. On cross-examination, Appellant admitted that he spent a considerable amount of time recuperating at Warren's house.

In December 2004, Appellant resumed driving a truck. In 2005 and 2006, Appellant continued making long hauls and only returned to the Houston area for a few days at a time. In late

December 2006, Barrett refused to let Denashia return to live with him, but Appellant did not know why. In January 2007, Appellant was interviewed by three different people about Denashia's allegations. Appellant claimed he had denied sexually assaulting Denashia in each of these interviews. He specifically denied ever telling Handler that he had sexual contact with her or that he became sexually excited by the contact. He did admit that he indicated on the drawing of his hand how far his middle finger, which was covered by the "wipe," penetrated the vagina.

The jury rejected Appellant's defenses and found him guilty of each of the four counts. The jury assessed his punishment at a fine of $10,000 and imprisonment for twenty years on Counts I and II and a fine of $10,000 and life imprisonment on Counts III and IV. The trial court ordered the sentences to be served consecutively. This appeal follows.

## IMPEACHMENT PURSUANT TO TEX.R.EVID. 806

In his first Issue, Appellant contends that the trial court abused its discretion by admitting evidence that Appellant had previously been convicted of failure to register as a sex offender. The State responds that the evidence was properly admitted pursuant to Texas Rules of Evidence 609 and 806.

*The Underlying Facts*

Detective Tom Gannucci testified regarding his involvement in the case, including his interview of Appellant. Gannucci later requested that another officer, Mark Handler, conduct a second interview because of his skills as an interviewer. On cross-examination, Gannucci testified that Appellant denied the allegations against him during the initial interview. He also admitted that he told other people involved in the case that he believed Appellant and did not think he had committed the offense. On re-direct, the State established that when Gannucci made these

statements he did not have the benefit of the facts learned during Handler's interview of Appellant.

The State then offered into evidence a certified copy of the judgment reflecting Appellant's conviction in 1999 for failure to register as a sex offender. The State expressly made the offer pursuant to Tex.R.Evid. 806 and argued that the prior conviction was admissible to impeach Appellant's hearsay statement made to Gannucci that he did not commit the offense. Appellant objected that his prior conviction "has nothing to do with whether or not he committed this crime" and he added that he should not be tried based on his prior convictions. Appellant also objected that the probative value of the evidence was outweighed by prejudice.[1] With respect to the State's offer of the evidence under Rule 806, Appellant objected that the prior conviction was not admissible to impeach the witness's opinion or the basis for it. The trial court overruled the objections and admitted the prior conviction.

Later, Appellant testified in his own defense and admitted that in 1994, he had pleaded no contest to aggravated sexual assault of a child and he was placed on deferred adjudication community supervision for five years. Appellant also testified that he was convicted of failing to register as a sex offender. The judgment admitted into evidence reflects that sentence was imposed on November 11, 1999.

*Relevant Law and*
*Standard of Review*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex.Crim.App. 2009); *McDonald v. State*, 179 S.W.3d 571, 576 (Tex.Crim.App. 2005). Under this standard, an appellate court should not disturb the trial

---

[1] Defense counsel actually misstated the objection by arguing that the probative value outweighs the prejudicial impact, but the context of her objection indicates she meant the opposite and it appears the trial court understood her objection.

court's decision if the ruling was within the zone of reasonable disagreement. *De La Paz*, 279 S.W.3d at 343-44; *Bigon v. State*, 252 S.W.3d 360, 367 (Tex.Crim.App. 2008).

Rule 806 provides that "[w]hen a hearsay statement . . . has been admitted in evidence, the credibility of the declarant may be attacked . . . by any evidence which would be admissible for those purposes if declarant had testified as a witness." TEX.R.EVID. 806. This rule permits a party to impeach the credibility of the non-testifying hearsay declarant with evidence of the declarant's prior convictions. *Griffith v. State*, 983 S.W.2d 282, 290 (Tex.Crim.App. 1998). Further, Rule 806 has been held to apply when the declarant is the non-testifying defendant. *See Appling v. State*, 904 S.W.2d 912, 916 (Tex.App.--Corpus Christi 1995, pet. ref'd). A defendant who testifies subjects himself to cross-examination and impeachment in the same manner as any other witness. *Bowley v. State*, 310 S.W.3d 431, 434 (Tex.Crim.App. 2010). This would include impeachment with a prior conviction as permitted by TEX.R.EVID. 609.

Rule 609(a) provides as follows:

**(a) General Rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

TEX.R. EVID. 609(a).

### Preservation of Error

Appellant first argues that Rule 806 is applicable because the statement sought to be impeached, Gannucci's testimony that Appellant denied the allegations, is not hearsay. The State responds that Appellant waived this issue because he did not raise it in the trial court. We agree. Evidentiary error must be preserved by making a proper objection and securing a ruling on that objection. TEX.R.APP.P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex.Crim.App. 2002);

*Peralta v. State*, 338 S.W.3d 598 (Tex.App.--El Paso 2010, no pet.). A proper objection is one that is specific and timely. TEX.R.APP. P. 33.1(a); *Wilson*, 71 S.W.3d at 349. While Appellant objected that the prior conviction was not admissible to impeach Gannucci's opinion about Appellant's innocence, he did not assert that Rule 806 did not apply because Gannucci's testimony about Appellant's denial of the allegations was not hearsay. Accordingly, this part of his argument is waived.

*Probative Value v. Prejudicial Effect*

Citing TEX.R.EVID. 403, Appellant also argues that the trial court abused its discretion by admitting the prior conviction because the danger of unfair prejudice substantially outweighed any probative value. Since the evidence was admitted pursuant to Rules 609 and 806, the applicable balancing test is the one provided by Rule 609(a). In *Theus v. State*, the Texas Court of Criminal Appeals articulated a non-exclusive list of five factors for courts to consider in determining under Rule 609 whether a prior conviction's probative value outweighs its prejudicial effect. *Theus v. State*, 845 S.W.2d 874, 880 (Tex.Crim.App. 1992). The five factors are: (1) the impeachment value of the prior crime, (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history, (3) the similarity between past crimes and the charged offense, (4) the importance of the defendant's testimony, and (5) the importance of the credibility issue. *Id*.

Looking first at the impeachment value of the prior crime, we keep in mind that a crime involving deception is higher than crimes involving violence. *Theus*, 845 S.W.2d at 881. When a party seeks to impeach a witness with evidence of a crime that relates more to deception than not, the first factor weighs in favor of admission. *Id*. We agree with the State that the prior crime involves deception since Appellant, by failing to register, concealed the address at which he resided or intended to reside. *See generally* TEX.CODE CRIM.PROC.ANN. art. 62.051(c)(West Supp.

2010)(listing required information to be supplied on registration form). This factor militates in favor of admission.

The second factor requires an examination of the temporal proximity of the past crime to the charged offense and Appellant's subsequent history. This factor will favor admission if the past crime is recent and if the witness has demonstrated a propensity for running afoul of the law. *Theus*, 845 S.W.2d at 881. Appellant was convicted of failing to register as a sex offender on November 11, 1999. The indictment alleged two counts of sexual assault and two counts of aggravated sexual assault alleged to have occurred between December of 2003 and September 2, 2006. The aggravated sexual assault charged in Count IV is alleged to have been committed on or about December 2, 2003 and the jury found Appellant guilty of Count IV as charged in the indictment. Given that one of the charged offenses occurred only five years after the past crime, we conclude that the second factor also favors admission. *See Theus*, 845 S.W.2d at 881 (five years held recent relative to charged offense under temporal proximity factor).

The third factor addresses the similarity between the past crime and the charged offense. Similarity between the past crime and the charged crime will militate against admission because the similarity increases the likelihood that a jury might convict based on the perception of a pattern of past conduct, rather than on the facts of the charged offense. *Id*. Failure to register as a sex offender is a different offense than sexual assault, but the admission of this prior conviction nevertheless informed the jury that Appellant had been determined to be a sex offender so there is some potential for the jury to perceive a pattern of past conduct. We conclude there is enough of a similarity that this factor weighs against admission.

We will consider the last two factors together because both depend on the nature of the defense and the means available to prove that defense. *Theus*, 845 S.W.2d at 881. In this case,

Appellant's testimony and credibility are critical to his defense because no other witness could dispute Detective Handler's account of his interview of Appellant and the meaning of the drawing admitted as State's Exhibit 4. Given the importance of Appellant's testimony to his defense, the State's need to impeach Appellant's credibility is likewise significant. The final two factors favor admission of the evidence.

Even though the majority of the factors favor admission of the evidence, there is some potential for the jury to convict based on a pattern of past conduct rather than the facts of the case. *See Theus*, 845 S.W.2d at 881 (holding that even though four of the factors favored admission of the evidence, the lack of impeachment value overrode the other four factors). The trial court, however, minimized the prejudice resulting from the admission of this conviction by instructing the jury that it could consider the evidence only as it related to Appellant's credibility and for the other permissible purposes specified in the charge. The trial court did not abuse its discretion by concluding that the probative value of the evidence outweighed its prejudicial effect. Issue One is overruled.

### EXTRANEOUS OFFENSE

In his second issue, Appellant argues that the trial court erred by admitting evidence that Appellant had sexually assaulted another child because the evidence was not relevant to an admissible purpose under Rule 404(b) and the danger of unfair prejudice outweighed the probative value of the evidence.

*Relevant Law and Standard of Review*

Generally, evidence of extraneous offenses may not be used against the accused in a criminal trial. *Daggett v. State*, 187 S.W.3d 444, 450 (Tex.Crim.App. 2005). In the face of a proper objection, evidence of other wrongful acts is not admissible to prove the character of the person to

establish that he acted accordingly regarding the alleged offense. TEX.R.EVID. 404(b); *Powell v. State*, 63 S.W.3d 435, 438 (Tex.Crim.App. 2001). An extraneous offense may be admissible, however, if it has relevance apart from its tendency to prove the character of a person in order to show that he acted in conformity therewith. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App. 1990)(op. on reh'g). Evidence which logically serves such purposes as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" is relevant beyond its tendency to prove conforming character. TEX.R.EVID. 404(b); *Montgomery*, 810 S.W.2d at 387. The list of "other purposes" identified in Rule 404(b) is not exclusive. *Rogers v. State*, 853 S.W.2d 29, 33 (Tex.Crim.App. 1993).

Rebuttal of a defensive theory is also one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b). *Moses v. State*, 105 S.W.3d 622, 626 (Tex.Crim.App. 2003). This exception includes defenses based on a claim of fabrication, retaliation, or lack of opportunity. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex.Crim.App. 2008)(extraneous-offense evidence was admissible for the noncharacter-conformity purpose of rebutting the defendant's defensive theory that the complainant fabricated her allegations against him and the defensive theory that the defendant, as a pastor, would not engage in the type of conduct alleged in the indictment); *Powell*, 63 S.W.3d at 438-40 (in prosecution for indecency with a child, defendant's opening statement that he lacked opportunity to molest the complainant because other children were always present opened the door to admission of extraneous-offense evidence that defendant molested others under almost identical circumstances to rebut defendant's lack of opportunity defensive theory); *Isenhower v. State*, 261 S.W.3d 168, 181 (Tex.App.--Houston [14th Dist.] 2008, no pet.)(in a sexual assault of a child case, extraneous offense admissible to rebut defensive theory of retaliation).

We review the trial court's admission of extraneous offense evidence for an abuse of

discretion. *Prible v. State*, 175 S.W.3d 724, 731 (Tex.Crim.App. 2005); *Moses*, 105 S.W.3d at 627. If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Id*.

*Other Purposes*

Appellant concedes that an extraneous offense may be admissible to rebut a defensive theory, but he insists he did not raise a defensive theory during either his opening statement or cross-examination. The indictment alleges that Appellant sexually assaulted the complainant on four occasions between 2003 and 2006. During the opening statement, Appellant's attorney stated that he had custody of her from 2003 to 2006. Counsel added that during this time period, Appellant had other individuals take care of the victim because he was a truck driver and he did not care for her while he was on the road. During cross-examination of the complainant, defense counsel established that in 2003 the complainant and Appellant lived in the home of her aunt, Paula Cardell, along with numerous other people. Similarly, the complainant and Appellant lived with Caroline Warren and several other people. Defense counsel also elicited testimony that Appellant was often on the road for months at a time and he only stayed a few weeks when he returned. When this evidence is considered with the opening statement, it arguably raises a lack of opportunity defense.

The victim in the extraneous offense case, Yolanda Yvette, testified that Appellant sexually abused her on numerous occasions when she was between the ages of six and ten. The assaults occurred even when other people were in the home and on one occasion, Appellant molested her even though another person[2] was in bed with them. The trial court could have reasonably concluded that the extraneous offense was relevant to rebut the lack of opportunity defensive theory because Appellant sexually abused Yvette in circumstances similar to those presented in the charged offense.

---

[2] The other person in bed was the mother of the complainant in the instant case.

*See Powell*, 63 S.W.3d at 438-40.

Appellant raised a defense of fabrication through cross-examination of the complainant. During cross-examination, Appellant's attorney focused on the complainant's failure to make an outcry to either her mother while visiting her in July of 2006 or to a school counselor, a doctor, or a relative at any time. Counsel specifically questioned the complainant about her denial of any sexual misconduct by Appellant when Caroline Warren asked her about it. Defense counsel also established through cross-examination of the complainant that Appellant was considerably stricter than her mother and she had gotten in trouble for breaking Appellant's rules. This evidence permits an inference that the complainant fabricated the allegations. The trial court could have concluded that the extraneous offense was relevant to rebut this defensive theory. *See Bass*, 270 S.W.3d at 562-63. Consequently, the court did not abuse its discretion by determining that the extraneous offense has relevance beyond character conformity.

### *Rule 403*

Appellant next argues that the extraneous offense evidence was inadmissible under TEX.R.EVID. 403. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." This rule favors the admission of relevant evidence, and it is presumed that relevant evidence will be more probative than prejudicial. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex.Crim.App. 2006). When undertaking a Rule 403 analysis, a trial court must balance (1) the inherent probative force of the proffered evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the

evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex.Crim.App. 2006).

Appellant argues that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. The term "probative value" refers to the inherent probative force of an item of evidence--that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation--coupled with the proponent's need for that item of evidence. *Casey v. State*, 215 S.W.3d 870, 879 (Tex.Crim.App. 2007); *Gigliobianco*, 210 S.W.3d at 641. "Unfair prejudice" refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. *Casey*, 215 S.W.3d at 879, 883. Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence. *Id*. at 880. Unfair prejudice does not arise from the mere fact that evidence injures a party's case. *Id.* at 883.

The evidence possesses considerable probative value because it refuted Appellant's defensive theories of fabrication and lack of opportunity to commit the charged offense. The State did not have any evidence, other than the complainant's testimony, to refute these defensive theories. Yvette's testimony that Appellant had sexually abused her on numerous occasions was certainly prejudicial and would generate an emotional response, but that is offset by the significant probative value of the evidence and the State's need for it. Accordingly, we find that the trial court did not abuse its discretion by finding that the probative value of the extraneous offense evidence was not substantially outweighed by the danger of unfair prejudice. We overrule Issue Two and affirm the judgment of the trial court.

August 31, 2011

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)