COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





GEORGE EDWARD THERAGOOD,

                                    Appellant,

v.

THE STATE OF TEXAS,

                                    Appellee. 

§
 
§
 
§
 
§
 
§

§


No. 08-10-00013-CR

Appeal from
435th District Court

of Montgomery County, Texas

(TC # 09-09-08902-CR)



 

 

 




O P I N I O N

            George Edward Theragood appeals his convictions of sexual assault (Counts I and II) and
aggravated sexual assault (Counts III and IV). A jury found Appellant guilty of each count and
assessed his punishment at a fine of $10,000 and imprisonment for twenty years on Counts I and II
and a fine of $10,000 and life imprisonment on Counts III and IV. The trial court ordered the
sentences to be served consecutively. For the reasons that follow, we affirm.
FACTUAL SUMMARY
            Denashia Theragood is Appellant’s daughter. She began living with him and her aunt, Paula
Cardell, in Houston when she was six years old. Denashia went back and forth between her parents
for the next few years but she began living with him permanently when she was in the sixth grade. 
At that time, they lived in Conroe. Appellant was a truck driver so he was often on the road for long
periods of time. 
            In December 2003, Denashia and her father were living in Conroe with Caroline Warren and
with several other people. When Appellant was home, he slept in the same room as Denashia. 
Denashia recalled that when she was twelve, Appellant began making her rub his penis every night
that he was home. She never told anyone because he had told her he would get in trouble. Appellant
next began putting his finger in Denashia’s vagina. This abuse lasted for a few months before
progressing to sexual intercourse. Denashia testified that Appellant would have intercourse with her
whenever he came home from his road trips which she estimated to be 100 times or more. She did
not tell because she did not have anyone she could trust or who would believe her. Denashia finally
told her mother, Rosa Barrett, in December 2006 when she was fifteen years of age. Denashia’s
mother reported it to appropriate law enforcement authorities. A sexual assault examination was
performed, and the sexual assault nurse examiner determined that although the anus and hymen were
normal, this finding did not rule out sexual abuse. 
            Detective Tom Gannucci of the Montgomery County Sheriff’s Office interviewed Appellant.
Gannucci later asked another investigator in the Sheriff’s Office, Mark Handler, to interview
Appellant because of his skills as an interviewer. During cross-examination, defense counsel
established that Appellant had denied the allegations during this interview and Gannucci initially
believed him. To impeach Appellant’s credibility, the State introduced a judgment showing
Appellant had been convicted of failing to register as a sex offender.
            Handler testified regarding his interview of Appellant. Appellant denied placing his penis
in Denashia’s vagina, but he admitted that he had touched her vagina while teaching her about sex. 
He said that he became sexually excited when he did this. Appellant told Handler that he also
touched Denashia’s vaginal area because he shaved her pubic hair for reasons of hygiene. Appellant
became sexually excited when doing this but he was taking medication that caused erectile
disfunction. He added that if he had not been on the medication, “something might have happened.” 
Handler drew an outline of Appellant’s hand and asked him to indicate which finger he used and
how far he had placed it inside of the vagina. The drawing, which was admitted as State’s Exhibit
4, indicates that Appellant inserted the tip of his middle finger into the vagina.
            Yolanda Yvette testified during the State’s case-in-chief that Appellant lived with her mother
in Dallas. Yvette had been told that Appellant was her biological father but she later found out this
was not true. Appellant sexually abused Yvette on many occasions when she was between the ages
of six and ten. When the abuse began, Appellant made her “grind on his groin” and he would kiss
her, but the abuse progressed to anal and vaginal penetration. The abuse continued even after
Yvette’s mother ended her relationship with Appellant because Yvette would visit with him. During
these visits, Yvette slept in the same bed as Appellant and he would sexually assault her even when
other people were asleep in the bed with them. Yvette recalled that Appellant sexually assaulted her
on at least one occasion when Denashia’s mother was in the bed with them. Yvette made an outcry
and in 1994, Appellant entered a plea of no contest to aggravated sexual assault. The court placed
Appellant on deferred adjudication probation for five years. Yvette, who was twenty-seven years-old
at the time of trial, had not seen Appellant since she was eleven. 
            Several witnesses testified for the defense. Denashia’s mother, Rosa Barrett, contradicted
Yvette’s testimony about sleeping in the same bed with Yvette and Appellant. Barrett attended the
court proceedings when Appellant was indicted for sexually assaulting Yvette. She recalled from
those proceedings that Appellant was required to register as a sex offender. Appellant had told her
that he was not guilty and that Yvette was being manipulated by her mother to make the accusations. 
Barrett knew that Appellant was strict with Denashia and he punished her for making a “C” in school
or talking too much on the telephone. When Denashia was fifteen, Barrett went to pick her up for
the Christmas holidays and discovered that she was sharing a room with Appellant. Barrett was both
surprised and concerned about this discovery. While Denashia was visiting her, Appellant called
because he had found Denashia’s diary and he was extremely upset and angry with her. Barrett told
Denashia that Appellant was upset with her and she would be punished when she returned home. 
The day after Christmas, Denashia told her mother what Appellant had been doing. Barrett
immediately made a police report. Barrett denied encouraging her daughter to make up these
allegations so she could live with her and she did not believe that Denashia had fabricated the
accusations.
            Paula Cardell testified that when Denashia lived with her, she shared a bedroom with
Cardell’s daughter. Appellant never spent the night at the house while Denashia lived there. There
were seven people living in the three-bedroom house when Denashia first moved in, but Cardell’s
niece and her children later moved into the house bringing the total to fifteen residents. Cardell was
aware of Appellant’s 1994 conviction for aggravated sexual assault of a child but she never believed
that it was true. She likewise did not believe Denashia because she was never alone with her father. 
            Appellant’s niece, Phylunda Theragood, lived with Cardell in 2003. Denashia slept in the
same bedroom as Phylunda and her children. Unlike Cardell, Phylunda testified that Appellant
sometimes spent the night at Cardell’s house when he returned from a trip. Phylunda did not believe
Denashia’s allegations. 
            Appellant’s girlfriend, Janice Pratt, testified that she and Appellant had been together since
1999. Consistent with Phylunda’s testimony, Pratt testified that Appellant sometimes spent time
wherever Denashia was living, but he also stayed with her. Denashia never lived with Pratt. Pratt
did not believe the allegations against Appellant. 
            Caroline Warren testified that Denashia moved in with her at the end of November 2003 and
had her own bedroom. Appellant left his clothes in the home but he was usually on the road, and
he often stayed with a friend when he returned. On cross-examination, Warren admitted that
Appellant occasionally spent the night in Denashia’s bedroom. Warren did not believe the
allegations. 
            Appellant testified against the advice of counsel. He pled no contest in 1994 to the
aggravated sexual assault of Yvette for the sole reason that the law enforcement authorities were
threatening to prosecute Rosa Barrett. Appellant admitted that he was convicted of failure to register
as a sex offender in 1999, but he explained that his attorney told him that he had five years to
register. When Appellant’s deferred adjudication probation was successfully completed and the case
dismissed, he thought he was no longer obligated to register.
            In February of 2003, Denashia was on a break from school and wanted to travel to California
with Appellant in his truck. When they were outside of Abilene, Appellant discovered that Denashia
had started her menstrual period for the first time. He first called Barrett and then Cardell. Cardell
explained what to purchase and instructed him how the feminine hygiene products should be used. 
They stopped at a truck stop and Appellant assisted Denashia in the shower by cleaning the vaginal
area with a wipe, but he never touched her body with his bare hand. Rather than continuing the trip
with Denashia, he drove to Houston and left Denashia with Cardell. Appellant had Denashia move
to Warren’s home in late November 2003 because Denashia had altered her report card. Count 4 of
the indictment alleged that Appellant sexually assaulted Denashia on or about December 2, 2003. 
Appellant testified that he left on a trip in early October 2003 and he did not return to Houston until
January 8, 2004. In March 2004, Appellant was seriously injured in an accident and he had neck
surgery. Appellant stayed at Warren’s house for a few days after getting out of the hospital before
going to Pratt’s house to recuperate. On cross-examination, Appellant admitted that he spent a
considerable amount of time recuperating at Warren’s house.
            In December 2004, Appellant resumed driving a truck. In 2005 and 2006, Appellant
continued making long hauls and only returned to the Houston area for a few days at a time. In late
December 2006, Barrett refused to let Denashia return to live with him, but Appellant did not know
why. In January 2007, Appellant was interviewed by three different people about Denashia’s
allegations. Appellant claimed he had denied sexually assaulting Denashia in each of these
interviews. He specifically denied ever telling Handler that he had sexual contact with her or that
he became sexually excited by the contact. He did admit that he indicated on the drawing of his hand
how far his middle finger, which was covered by the “wipe,” penetrated the vagina. 
            The jury rejected Appellant’s defenses and found him guilty of each of the four counts. The
jury assessed his punishment at a fine of $10,000 and imprisonment for twenty years on Counts I and
II and a fine of $10,000 and life imprisonment on Counts III and IV. The trial court ordered the
sentences to be served consecutively. This appeal follows.
IMPEACHMENT PURSUANT TO
TEX.R.EVID. 806

            In his first Issue, Appellant contends that the trial court abused its discretion by admitting
evidence that Appellant had previously been convicted of failure to register as a sex offender. The
State responds that the evidence was properly admitted pursuant to Texas Rules of Evidence 609 and
806.
The Underlying Facts
            Detective Tom Gannucci testified regarding his involvement in the case, including his
interview of Appellant. Gannucci later requested that another officer, Mark Handler, conduct a
second interview because of his skills as an interviewer. On cross-examination, Gannucci testified
that Appellant denied the allegations against him during the initial interview. He also admitted that
he told other people involved in the case that he believed Appellant and did not think he had
committed the offense. On re-direct, the State established that when Gannucci made these
statements he did not have the benefit of the facts learned during Handler’s interview of Appellant. 
The State then offered into evidence a certified copy of the judgment reflecting Appellant’s
conviction in 1999 for failure to register as a sex offender. The State expressly made the offer
pursuant to Tex.R.Evid. 806 and argued that the prior conviction was admissible to impeach
Appellant’s hearsay statement made to Gannucci that he did not commit the offense. Appellant
objected that his prior conviction “has nothing to do with whether or not he committed this crime”
and he added that he should not be tried based on his prior convictions. Appellant also objected that
the probative value of the evidence was outweighed by prejudice.


 With respect to the State’s offer
of the evidence under Rule 806, Appellant objected that the prior conviction was not admissible to
impeach the witness’s opinion or the basis for it. The trial court overruled the objections and
admitted the prior conviction. 
            Later, Appellant testified in his own defense and admitted that in 1994, he had pleaded no
contest to aggravated sexual assault of a child and he was placed on deferred adjudication
community supervision for five years. Appellant also testified that he was convicted of failing to
register as a sex offender. The judgment admitted into evidence reflects that sentence was imposed
on November 11, 1999.
Relevant Law and
Standard of Review
            We review a trial court’s decision to admit or exclude evidence for an abuse of discretion. 
 De La Paz v. State, 279 S.W.3d 336, 343 (Tex.Crim.App. 2009); McDonald v. State, 179 S.W.3d
571, 576 (Tex.Crim.App. 2005). Under this standard, an appellate court should not disturb the trial
court’s decision if the ruling was within the zone of reasonable disagreement. De La Paz, 279
S.W.3d at 343-44; Bigon v. State, 252 S.W.3d 360, 367 (Tex.Crim.App. 2008).
            Rule 806 provides that “[w]hen a hearsay statement . . . has been admitted in evidence, the
credibility of the declarant may be attacked . . . by any evidence which would be admissible for those
purposes if declarant had testified as a witness.” Tex.R.Evid. 806. This rule permits a party to
impeach the credibility of the non-testifying hearsay declarant with evidence of the declarant’s prior
convictions. Griffith v. State, 983 S.W.2d 282, 290 (Tex.Crim.App. 1998). Further, Rule 806 has
been held to apply when the declarant is the non-testifying defendant. See Appling v. State, 904
S.W.2d 912, 916 (Tex.App.--Corpus Christi 1995, pet. ref’d). A defendant who testifies subjects
himself to cross-examination and impeachment in the same manner as any other witness. Bowley
v. State, 310 S.W.3d 431, 434 (Tex.Crim.App. 2010). This would include impeachment with a prior
conviction as permitted by Tex.R.Evid. 609.
            Rule 609(a) provides as follows:
(a) General Rule. For the purpose of attacking the credibility of a witness, evidence
that the witness has been convicted of a crime shall be admitted if elicited from the
witness or established by public record but only if the crime was a felony or involved
moral turpitude, regardless of punishment, and the court determines that the
probative value of admitting this evidence outweighs its prejudicial effect to a party.

TEX.R. EVID. 609(a). 
Preservation of Error
            Appellant first argues that Rule 806 is applicable because the statement sought to be
impeached, Gannucci’s testimony that Appellant denied the allegations, is not hearsay. The State
responds that Appellant waived this issue because he did not raise it in the trial court. We agree. 
Evidentiary error must be preserved by making a proper objection and securing a ruling on that
objection. Tex.R.App.P. 33.1(a); Wilson v. State, 71 S.W.3d 346, 349 (Tex.Crim.App. 2002);
Peralta v. State, 338 S.W.3d 598 (Tex.App.--El Paso 2010, no pet.). A proper objection is one that
is specific and timely. Tex.R.App. P. 33.1(a); Wilson, 71 S.W.3d at 349. While Appellant objected
that the prior conviction was not admissible to impeach Gannucci’s opinion about Appellant’s
innocence, he did not assert that Rule 806 did not apply because Gannucci’s testimony about
Appellant’s denial of the allegations was not hearsay. Accordingly, this part of his argument is
waived.
Probative Value v. Prejudicial Effect
            Citing Tex.R.Evid. 403, Appellant also argues that the trial court abused its discretion by
admitting the prior conviction because the danger of unfair prejudice substantially outweighed any
probative value. Since the evidence was admitted pursuant to Rules 609 and 806, the applicable
balancing test is the one provided by Rule 609(a). In Theus v. State, the Texas Court of Criminal
Appeals articulated a non-exclusive list of five factors for courts to consider in determining under
Rule 609 whether a prior conviction’s probative value outweighs its prejudicial effect. Theus v.
State, 845 S.W.2d 874, 880 (Tex.Crim.App. 1992). The five factors are: (1) the impeachment value
of the prior crime, (2) the temporal proximity of the past crime relative to the charged offense and
the witness’s subsequent history, (3) the similarity between past crimes and the charged offense, (4)
the importance of the defendant’s testimony, and (5) the importance of the credibility issue. Id.
            Looking first at the impeachment value of the prior crime, we keep in mind that a crime
involving deception is higher than crimes involving violence. Theus, 845 S.W.2d at 881. When 
a party seeks to impeach a witness with evidence of a crime that relates more to deception than not,
the first factor weighs in favor of admission. Id. We agree with the State that the prior crime
involves deception since Appellant, by failing to register, concealed the address at which he resided
or intended to reside. See generally Tex.Code Crim.Proc.Ann. art. 62.051(c)(West Supp.
2010)(listing required information to be supplied on registration form). This factor militates in favor
of admission. 
            The second factor requires an examination of the temporal proximity of the past crime to the
charged offense and Appellant’s subsequent history. This factor will favor admission if the past
crime is recent and if the witness has demonstrated a propensity for running afoul of the law. Theus,
845 S.W.2d at 881. Appellant was convicted of failing to register as a sex offender on November
11, 1999. The indictment alleged two counts of sexual assault and two counts of aggravated sexual
assault alleged to have occurred between December of 2003 and September 2, 2006. The aggravated
sexual assault charged in Count IV is alleged to have been committed on or about December 2, 2003
and the jury found Appellant guilty of Count IV as charged in the indictment. Given that one of the
charged offenses occurred only five years after the past crime, we conclude that the second factor
also favors admission. See Theus, 845 S.W.2d at 881 (five years held recent relative to charged
offense under temporal proximity factor). 
            The third factor addresses the similarity between the past crime and the charged offense. 
Similarity between the past crime and the charged crime will militate against admission because the
similarity increases the likelihood that a jury might convict based on the perception of a pattern of
past conduct, rather than on the facts of the charged offense. Id. Failure to register as a sex offender
is a different offense than sexual assault, but the admission of this prior conviction nevertheless
informed the jury that Appellant had been determined to be a sex offender so there is some potential
for the jury to perceive a pattern of past conduct. We conclude there is enough of a similarity that
this factor weighs against admission.
              We will consider the last two factors together because both depend on the nature of the
defense and the means available to prove that defense. Theus, 845 S.W.2d at 881. In this case, 
Appellant’s testimony and credibility are critical to his defense because no other witness could
dispute Detective Handler’s account of his interview of Appellant and the meaning of the drawing
admitted as State’s Exhibit 4. Given the importance of Appellant’s testimony to his defense, the
State’s need to impeach Appellant’s credibility is likewise significant. The final two factors favor
admission of the evidence. 
            Even though the majority of the factors favor admission of the evidence, there is some
potential for the jury to convict based on a pattern of past conduct rather than the facts of the case. 
See Theus, 845 S.W.2d at 881 (holding that even though four of the factors favored admission of the
evidence, the lack of impeachment value overrode the other four factors). The trial court, however,
minimized the prejudice resulting from the admission of this conviction by instructing the jury that
it could consider the evidence only as it related to Appellant’s credibility and for the other
permissible purposes specified in the charge. The trial court did not abuse its discretion by
concluding that the probative value of the evidence outweighed its prejudicial effect. Issue One is
overruled.
EXTRANEOUS OFFENSE
            In his second issue, Appellant argues that the trial court erred by admitting evidence that
Appellant had sexually assaulted another child because the evidence was not relevant to an
admissible purpose under Rule 404(b) and the danger of unfair prejudice outweighed the probative
value of the evidence. 
Relevant Law and Standard of Review
            Generally, evidence of extraneous offenses may not be used against the accused in a criminal
trial. Daggett v. State, 187 S.W.3d 444, 450 (Tex.Crim.App. 2005). In the face of a proper
objection, evidence of other wrongful acts is not admissible to prove the character of the person to
establish that he acted accordingly regarding the alleged offense. Tex.R.Evid. 404(b); Powell v.
State, 63 S.W.3d 435, 438 (Tex.Crim.App. 2001). An extraneous offense may be admissible,
however, if it has relevance apart from its tendency to prove the character of a person in order to
show that he acted in conformity therewith. Montgomery v. State, 810 S.W.2d 372, 387
(Tex.Crim.App. 1990)(op. on reh’g). Evidence which logically serves such purposes as “proof of
motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or
accident” is relevant beyond its tendency to prove conforming character. Tex.R.Evid. 404(b);
Montgomery, 810 S.W.2d at 387. The list of “other purposes” identified in Rule 404(b) is not
exclusive. Rogers v. State, 853 S.W.2d 29, 33 (Tex.Crim.App. 1993). 
            Rebuttal of a defensive theory is also one of the permissible purposes for which relevant
evidence may be admitted under Rule 404(b). Moses v. State, 105 S.W.3d 622, 626 (Tex.Crim.App.
2003). This exception includes defenses based on a claim of fabrication, retaliation, or lack of
opportunity. See Bass v. State, 270 S.W.3d 557, 563 (Tex.Crim.App. 2008)(extraneous-offense
evidence was admissible for the noncharacter-conformity purpose of rebutting the defendant’s
defensive theory that the complainant fabricated her allegations against him and the defensive theory
that the defendant, as a pastor, would not engage in the type of conduct alleged in the indictment);
Powell, 63 S.W.3d at 438-40 (in prosecution for indecency with a child, defendant’s opening
statement that he lacked opportunity to molest the complainant because other children were always
present opened the door to admission of extraneous-offense evidence that defendant molested others
under almost identical circumstances to rebut defendant’s lack of opportunity defensive theory);
Isenhower v. State, 261 S.W.3d 168, 181 (Tex.App.--Houston [14th Dist.] 2008, no pet.)(in a sexual
assault of a child case, extraneous offense admissible to rebut defensive theory of retaliation). 
            We review the trial court’s admission of extraneous offense evidence for an abuse of
discretion. Prible v. State, 175 S.W.3d 724, 731 (Tex.Crim.App. 2005); Moses, 105 S.W.3d at 627. 
If the trial court’s ruling is within the zone of reasonable disagreement, there is no abuse of
discretion. Id.
Other Purposes
            Appellant concedes that an extraneous offense may be admissible to rebut a defensive theory,
but he insists he did not raise a defensive theory during either his opening statement or cross-examination. The indictment alleges that Appellant sexually assaulted the complainant on four
occasions between 2003 and 2006. During the opening statement, Appellant’s attorney stated that
he had custody of her from 2003 to 2006. Counsel added that during this time period, Appellant had
other individuals take care of the victim because he was a truck driver and he did not care for her
while he was on the road. During cross-examination of the complainant, defense counsel established
that in 2003 the complainant and Appellant lived in the home of her aunt, Paula Cardell, along with
numerous other people. Similarly, the complainant and Appellant lived with Caroline Warren and
several other people. Defense counsel also elicited testimony that Appellant was often on the road
for months at a time and he only stayed a few weeks when he returned. When this evidence is
considered with the opening statement, it arguably raises a lack of opportunity defense. 
            The victim in the extraneous offense case, Yolanda Yvette, testified that Appellant sexually
abused her on numerous occasions when she was between the ages of six and ten. The assaults
occurred even when other people were in the home and on one occasion, Appellant molested her
even though another person


 was in bed with them. The trial court could have reasonably concluded
that the extraneous offense was relevant to rebut the lack of opportunity defensive theory because
Appellant sexually abused Yvette in circumstances similar to those presented in the charged offense. 
See Powell, 63 S.W.3d at 438-40.
            Appellant raised a defense of fabrication through cross-examination of the complainant. 
During cross-examination, Appellant’s attorney focused on the complainant’s failure to make an
outcry to either her mother while visiting her in July of 2006 or to a school counselor, a doctor, or
a relative at any time. Counsel specifically questioned the complainant about her denial of any
sexual misconduct by Appellant when Caroline Warren asked her about it. Defense counsel also
established through cross-examination of the complainant that Appellant was considerably stricter
than her mother and she had gotten in trouble for breaking Appellant’s rules. This evidence permits
an inference that the complainant fabricated the allegations. The trial court could have concluded
that the extraneous offense was relevant to rebut this defensive theory. See Bass, 270 S.W.3d at 562-63. Consequently, the court did not abuse its discretion by determining that the extraneous offense
has relevance beyond character conformity. 
Rule 403
            Appellant next argues that the extraneous offense evidence was inadmissible under
Tex.R.Evid. 403. Rule 403 provides: “Although relevant, evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless presentation of cumulative
evidence.” This rule favors the admission of relevant evidence, and it is presumed that relevant
evidence will be more probative than prejudicial. Shuffield v. State, 189 S.W.3d 782, 787
(Tex.Crim.App. 2006). When undertaking a Rule 403 analysis, a trial court must balance (1) the
inherent probative force of the proffered evidence along with (2) the proponent’s need for that
evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any
tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the
evidence to be given undue weight by a jury that has not been equipped to evaluate the probative
force of the evidence, and (6) the likelihood that presentation of the evidence will consume an
inordinate amount of time or merely repeat evidence already admitted. Gigliobianco v. State, 210
S.W.3d 637, 641-42 (Tex.Crim.App. 2006).
            Appellant argues that the probative value of the evidence is substantially outweighed by the
danger of unfair prejudice. The term “probative value” refers to the inherent probative force of an
item of evidence--that is, how strongly it serves to make more or less probable the existence of a fact
of consequence to the litigation--coupled with the proponent’s need for that item of evidence. Casey
v. State, 215 S.W.3d 870, 879 (Tex.Crim.App. 2007); Gigliobianco, 210 S.W.3d at 641. “Unfair
prejudice” refers to a tendency to suggest decision on an improper basis, commonly, though not
necessarily, an emotional one. Casey, 215 S.W.3d at 879, 883. Evidence might be unfairly
prejudicial if, for example, it arouses the jury’s hostility or sympathy for one side without regard to
the logical probative force of the evidence. Id. at 880. Unfair prejudice does not arise from the mere
fact that evidence injures a party’s case. Id. at 883. 
            The evidence possesses considerable probative value because it refuted Appellant’s defensive
theories of fabrication and lack of opportunity to commit the charged offense. The State did not have
any evidence, other than the complainant’s testimony, to refute these defensive theories. Yvette’s
testimony that Appellant had sexually abused her on numerous occasions was certainly prejudicial
and would generate an emotional response, but that is offset by the significant probative value of the
evidence and the State’s need for it. Accordingly, we find that the trial court did not abuse its
discretion by finding that the probative value of the extraneous offense evidence was not
substantially outweighed by the danger of unfair prejudice. We overrule Issue Two and affirm the
judgment of the trial court.

August 31, 2011                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)