

# NUMBER 13-13-00657-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**MARIO ALBERTO ALANIZ,**                                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

---

**On appeal from the 138th District Court
of Cameron County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Longoria
Memorandum Opinion by Justice Benavides**

The State charged Mario Alberto Alaniz with robbery, a second degree felony, to which Alaniz pleaded not guilty.  *See* TEX. PENAL CODE ANN. § 29.02 (West, Westlaw through 2015 R.S.).  A Cameron County jury later found Alaniz guilty as charged, and the trial court assessed his punishment at four years' imprisonment with the Texas

Department of Criminal Justice's Institutional Division. By four issues, Alaniz asserts that: (1) the evidence is insufficient to sustain his conviction for robbery under the law of parties; (2) the trial court reversibly erred by allowing the State to introduce extraneous evidence related to an extraneous forgery offense; (3) the trial court reversibly erred by not giving the jury a limiting instruction regarding an extraneous offense; and (4) the trial court reversibly erred by admitting into evidence Alaniz's statement to police without proper translation into English. We affirm.

## I. BACKGROUND

In the late afternoon of February 9, 2013, Odulia Anderson exited a Wal-Mart in Brownsville and walked toward her parked vehicle when a black Nissan Sentra approached her. An unknown female passenger exited the rear driver's side of the Sentra and took Anderson's purse. After a brief struggle, the unknown female returned to the Sentra with Anderson's purse, and the car sped away. Anderson sustained injuries to her head, back, knee, and one of her arms. Anderson was, however, able to provide the license plate number of the Nissan Sentra to police; the vehicle was registered to Mary Lou Arredondo.

Police investigators eventually turned their attention from the scene of the robbery to an H-E-B gas station where an individual, later identified as Arredondo, unsuccessfully attempted to cash a $40 check in Anderson's name along with Anderson's driver's license. Police later obtained video surveillance footage from the gas station. In the video, Alaniz appears to ask the station's clerk to borrow a pen and later returns to his vehicle. The gas station's clerk, Janie Castillo, identified Alaniz at trial as the individual who asked to borrow the pen, and further testified that Alaniz took the pen and returned

2

to the front passenger seat of a small black vehicle. A short time later, Castillo explained that Arredondo exited the driver's side of the black vehicle and attempted to cash the $40 check with Anderson's driver's license. When Arredondo experienced issues with cashing the check, Castillo testified that Arredondo returned to her vehicle and drove away.

When later questioned by Brownsville police investigator Eduardo Reyes, Alaniz admitted in a recorded interview that he had been "driving around" and "partying" with Arredondo and another female on February 9, 2013. Alaniz also admitted to Investigator Reyes that they were "all high." Alaniz stated that he had traveled from Wal-Mart to a dumpster behind a coffee shop, and later to the H-E-B gas station. On this information, police investigated the dumpster behind the coffee shop and discovered Anderson's purse and other items that were located inside of the purse. Alaniz acknowledges that he asked the H-E-B gas station clerk for a pen, but stated that he did not know what the pen was for, despite seeing the check and the driver's license belonging to Anderson in the car. Investigator Reyes opined that the fact that Alaniz remained in the vehicle following Anderson's robbery shows that he had knowledge of the plan to rob Anderson and that "he was a willing participant."

At the conclusion of the one-day trial, the jury found Alaniz guilty as charged, and the trial court sentenced Alaniz to four years' imprisonment. This appeal followed.

## II. SUFFICIENCY CHALLENGE

By his first issue, Alaniz asserts that the evidence is insufficient to prove that he was a party to the robbery.

**A.    Standard of Review and Applicable Law**

In reviewing sufficiency of evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.   *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.).   In viewing the evidence in the light most favorable to the verdict, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony.   *Brooks*, 323 S.W.3d at 899.   It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilty is warranted by the cumulative force of all incriminating evidence. *Winfrey*, 393 S.W.3d at 768.

The elements of the offense are measured as defined by a hypothetically correct jury charge.   *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).   Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*   Under a hypothetically correct jury charge in this case, Alaniz is guilty of robbery if, in the course of committing theft and with intent to obtain property, he intentionally or knowingly caused bodily injury to another.   *See id.* § 29.02(a) (West, Westlaw through

4

2015 R.S.).   A person commits a theft if he unlawfully appropriates property with intent to deprive the owner of property.   *See id.* § 31.03(a) (West, Westlaw through 2015 R.S.).

A hypothetically correct charge in this case would allow the jury to convict Alaniz under "the law of parties."   *See id.* § 7.02 (West, Westlaw through 2015 R.S.).   Under the law of parties, a person is criminally responsible for an offense committed by the conduct of another, if:   acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.   *Id.*   In determining whether the accused participated as a party, the court may look to events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.   *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994).

## B.    Discussion

On appeal, Alaniz solely argues that the evidence is insufficient to prove that he was a party to the robbery because he was merely present while the robbery took place. We disagree.   While Alaniz is correct to argue that mere presence of a person at the scene of a crime, or even flight from the scene, without more, is insufficient to support a conviction as a party to the offense, *see Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012), when viewing all of the evidence collectively and allowing the jury to draw reasonable inferences from the evidence, we conclude that the evidence is sufficient to find Alaniz guilty of robbery under the law of parties.

First, the evidence is undisputed that Alaniz was a passenger of the Nissan Sentra used in this robbery before the vehicle arrived at the Wal-Mart store, when it arrived at

5

the dumpster, and ultimately, when it stopped at the H-E-B gas station after the robbery. Although Alaniz denied his knowledge of the robbery or his involvement in its ultimate execution, the evidence shows that several items from Anderson's stolen purse were found in the coffee shop's dumpster that Alaniz told police about. Additionally, the evidence shows that approximately twenty minutes after the robbery, Alaniz borrowed a pen from a gas station clerk and took it back to Arredondo's vehicle. A short time after borrowing the pen, the evidence shows that Arredondo returned to the gas station clerk and attempted to cash a check from Anderson's checkbook using Anderson's driver's license. Although retrieving a pen is not per se an unlawful act or an element of a crime, the jury could have reasonably concluded that the pen retrieved by Alaniz was used by Arredondo to fill out the check that was unlawfully taken from Anderson during the robbery, and Arredondo unsuccessfully attempted to cash it. A reasonable fact finder could have concluded that this post-robbery act shows an understanding and common design by Alaniz and the others to commit the robbery. Alaniz's statement to the police that he did not know what the pen was to be used for is contrary evidence which the jury was entitled to disbelieve. *See Brooks*, 323 S.W.3d at 899. Finally, Alaniz told police that he saw Anderson's checks and driver's license at the time that he borrowed the gas station clerk's pen.

Accordingly, after examining all of the evidence in the light most favorable to the verdict, as well as looking to events occurring before, during and after the commission of the robbery, we conclude that Alaniz's actions and involvement with the principal actors of the robbery show an understanding and common design on his part to take part in the robbery. *See Ransom*, 920 S.W.2d at 302. Therefore, we hold that the evidence is

6

legally sufficient to support Alaniz's conviction.   Alaniz's first issue is overruled.

### III.   EXTRANEOUS EVIDENCE

By his second and third issues, Alaniz asserts that the trial court committed reversible error by: (1) allowing the State to introduce extraneous evidence related to a pending forgery indictment against him; and (2) failing to give a limiting instruction regarding this extraneous offense.   Because these two issues are related, we will address them together.

### A.   Preservation of Error

The State argues that Alaniz did not properly preserve his second issue for appellate review.   We disagree.   As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely objection stating the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context, and that the trial court ruled on the objection.   TEX. R. APP. P. 33.1.   In this case, Alaniz's trial counsel objected prior to Investigator Reyes testifying about the purported forged check that Arredondo presented at the H-E-B gas station.   Although a bench conference took place off the record following Alaniz's objection, the trial court was made aware—on the record— during a pre-trial motion in limine hearing of Alaniz's complaints under rule of evidence 404(b) regarding Investigator Reyes's testimony, and the trial court asked the parties to "approach the bench" when the issue came up again at trial.   Additionally, Investigator Reyes was permitted to testify about the alleged forged check, and thus we infer that Alaniz's objection was overruled.   *See id.*   Because we conclude that this issue was

7

properly preserved, we will now address its merits.

**B.      Standard of Review and Applicable Law**

We review a trial court's decision to admit or exclude evidence over a rule 404(b) objection for an abuse of discretion. *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (en banc). Stated another way, we will not disturb a trial court's ruling if it was "at least within the zone of reasonable disagreement." *Id.* Once a complaint is lodged, it is incumbent upon the proponent of extraneous bad act evidence, in this case the State, to satisfy the trial court that the "other crime, wrong, or act" has relevance apart from its tendency "to prove character of a person in order to show that he acted in conformity therewith." *Id.* (citing TEX. R. EVID. 404(b)). If the trial court determines the evidence has no relevance apart from character conformity, then the evidence is absolutely inadmissible, and the trial court has no discretion to admit it. *Id.* However, the proponent of the evidence may persuade the trial court that the "other crime, wrong, or act" has relevance apart from character conformity—i.e., that it tends to establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary fact, such as motive, opportunity or preparation, leading inferentially to an elemental fact; or that it rebuts a defensive theory by showing, e.g., absence of mistake or accident. TEX. R. EVID. 404(b); *Montgomery,* 810 S.W.2d at 387–88.

Additionally, evidence of extraneous offenses that are indivisibly connected to the charged offense and necessary to the State's case in proving the charged offense may be admissible as relevant evidence to explain the context of the offense for which the defendant is on trial. *Lockhart v. State*, 847 S.W.2d 568, 571 (Tex. Crim. App. 1992)

8

## C.     Discussion

The complained-of evidence in this case relates to the events that transpired at the H-E-B gas station.   The State argues that this evidence is admissible over Alaniz's rule 404(b) objection because it is "same transaction contextual evidence," and as a result, did not require a limiting instruction.   We agree with both of the State's contentions.

> Same transaction contextual evidence is deemed admissible as a so-called exception to the propensity rule where several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others.   The reason for its admissibility is simply because in narrating the one it is impracticable to avoid describing the other, and not because the other has any evidential purpose.   Necessity, then, seems to be one of the reasons behind admitting evidence of the accused's acts, words and conduct at the time of the commission of the offense.

*Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (internal citations and quotations omitted).

The State's purpose for admitting the evidence of Alaniz borrowing a pen and Arredondo's attempt to cash one of Anderson's stolen checks is intermixed and blended with the underlying robbery because it shows an agreement, plan, and understanding between Alaniz and the other passengers of the Nissan Sentra to rob Anderson.   *See id.* We hold that this evidence was admissible as same transaction contextual evidence because it was essential to understanding the context and circumstances of the robbery and Alaniz's role as a party to the offense, and the trial court did not abuse its discretion by admitting it.   Likewise, because we conclude that this evidence is admissible as same transaction contextual evidence, it was not subject to the requirement of a limiting instruction.   *See Camacho v. State*, 864 S.W.2d 524, 535 (Tex. Crim. App. 1993).

9

Alaniz's second and third issues are overruled.

## IV. ALANIZ'S STATEMENT

By his fourth and final issue, Alaniz asserts that the trial court reversibly erred by admitting into evidence his video statement to police that was not properly translated into English pursuant to rule 1009 of the rules of evidence.

## A. Standard of Review and Applicable Law

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). We will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Id.*

> Rule of evidence 1009(a) (Translating a Foreign Language Document) states:
>
> A translation of foreign language documents shall be admissible upon the affidavit of a qualified translator setting forth the qualifications of the translator and certifying that the translation is fair and accurate. Such affidavit, along with the translation and the underlying foreign language documents, shall be served upon all parties at least 45 days prior to the date of trial.

TEX. R. EVID. 1009(a). However, a party may offer the live testimony of a qualified translator to translate a foreign language document. *See id.* R. 1009(e); *see also Peralta v. State*, 338 S.W.3d 598, 606 (Tex. App.—El Paso 2010, no pet.) ("In the event the time requirements of subsection (a) are not met, a party may nevertheless introduce the translation at trial either by live testimony or by deposition testimony of a qualified expert translator.").

## B. Discussion

Alaniz's audio statement to police contained both English and Spanish. Although

the record is clear that the State did not provide a written translation of the Spanish portions of Alaniz's statement under rule 1009(a), the trial court called a certified Spanish-to-English interpreter to translate the Spanish portions of the audio statement through live testimony. The interpreter's qualifications were not challenged by Alaniz's trial counsel, and the interpreter testified as needed while the audio was played for the jury. We hold that this method of translation is permitted by rule 1009(e), and the trial court did not abuse its discretion by admitting Alaniz's statement. *See id.* R. 1009(e); *Peralta*, 338 S.W.3d at 606. We overrule Alaniz's fourth issue.

## V. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
8th day of October, 2015.