**Affirmed; Opinion Filed January 31, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-16-01280-CR
No. 05-16-01281-CR
No. 05-16-01282-CR

**JOSE M. DOMINGUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F15-31011-V, F15-31009-V & F15-30988-V**

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Boatright
Opinion by Justice Evans

Jose M. Dominguez was charged by indictment with the offenses of continuous sexual abuse of a child, aggravated sexual assault of a child, and indecency with a child. The jury found appellant guilty of each offense, as alleged in the indictments, and assessed punishment at ninety-nine years' imprisonment in the aggravated sexual assault and continuous sexual abuse cases, and twenty years' imprisonment in the indecency with a child case. On appeal, appellant challenges the sufficiency of the evidence to support the conviction for continuous sexual abuse of a child contending that (1) the evidence shows that there were two periods of alleged abuse, and (2) the evidence was insufficient to prove the predicate offense of indecency with a child because it did not show that appellant acted with sexual intent. Appellant also contends that the

trial court erred in allowing the State to publish an un-translated foreign language document. We affirm the trial court's judgments.

## BACKGROUND

ZG and LG are appellant's granddaughters. ZG is the complainant in the continuous sexual abuse case. LG is the complainant in the aggravated sexual assault and indecency with a child cases. At the time of trial, ZG was fifteen and LG was thirteen.

ZG testified that one of the first things she remembered was appellant touching her when she was seven years old. She specifically described a time when she was in her grandparents' bedroom playing on the PlayStation with her siblings and appellant began rubbing his hand on her leg in way that felt uncomfortable and inappropriate.[1] A couple months later when ZG was still seven years old, appellant made her perform oral sex on him. ZG testified that "maybe once every two weeks" appellant would start rubbing ZG's leg and slowly go up close to her vaginal area until she would grab his hand and push it away.

ZG testified that when she was eight and nine years old, the touching was not as constant but appellant would give her "passionate hugs" where he would caress her, putting his hand on her lower back close to her buttocks. Appellant would also require her to kiss him on the lips, as opposed to the usual family greeting of a kiss on the cheek. During the kiss, appellant would force his tongue into ZG's mouth.

ZG also testified about an incident that occurred when she was twelve years old. Appellant was on one side of the hall and walked by ZG swinging his arms and he touched her vaginal area with his hand. ZG did not believe the touching was accidental because she tried to get out of his way by pushing herself against the wall.

---

[1] ZG testified that his hand did not ever progress into something that he should not have done, but that "It just didn't feel right" because of the faces he would make "Like a little smirk."

ZG testified that when she was thirteen years old, she would go into the guest bedroom at her grandparents' house in order to be alone. Appellant would come into the bedroom and lay next her, putting his head on top of her thigh near her vaginal area while caressing her legs. ZG would kick her way into the corner of the bed to make appellant get off of her and leave the room.

The earliest age ZG remembered bringing appellant's conduct to her mother's attention was around nine. She began telling her cousin about it when she was a little younger, but her cousin did not want to talk about it. ZG's mother testified that ZG was seven when she first made outcry about her grandfather's sexual abuse. ZG was in the restroom and told her mother that her private hurt. Her mother saw that the area was irritated and when she asked ZG what happened, ZG told her that grandpa was touching her.

LG testified that she was seven years old when appellant started sexually abusing her. LG testified that Appellant would constantly touch her breasts and vagina, at first over her clothes and then under the clothes. LG described an incident when she was twelve years old where appellant trapped her in a closet, bent her over, and pushed his penis into the lips of her vagina. Appellant then forced LG to kiss his penis. After the assault was over, appellant told LG that he was going have sex with her when she was fifteen.

LG also testified that there were several times when appellant would require LG to get on top of him on the bed and rub herself against his penis. On other occasions, appellant would grab her hand and force her to touch his penis, both over his clothes and under his clothes. Like her sister, LG was also required to kiss appellant on the lips when she greeted him and as with ZG, appellant would force his tongue into LG's mouth. LG testified that she told both her mother and her cousin about the abuse.

## ANALYSIS

### I.    Sufficiency of Evidence – Period of Abuse

In appellant's first issue, he contends the evidence is insufficient to support the conviction for continuous sexual abuse of ZG. The indictment alleged, in pertinent part:

> That JOSE M DOMINGUEZ, hereinafter called Defendant, on or about September 1, 2009, did then and there intentionally and knowingly, during a period that was 30 or more days in duration, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [ZG], a child younger than 14 years of age, hereinafter called complainant, namely by: by contact between the mouth of the complainant and the sexual organ of the Defendant AND by the contact between the hand of the Defendant and the genitals of the complainant with the intent to arouse and gratify the sexual desire of the appellant.

The first sexual act alleged in the indictment constitutes aggravated sexual assault under TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(v), (a)(2)(B) (West Supp. 2017). The second sexual act alleged constitutes indecency with a child under TEX. PENAL CODE ANN. § 21.11(a)(1), (c)(1) (West Supp. 2017). The evidence at trial showed that appellant committed the aggravated sexual assault against ZG in either 2008 or 2009 when she was seven years old and that he committed the indecency offense in 2013 when she was twelve years old. Appellant contends that because the two incidences of sexual abuse were separated in time by five years, they did not constitute a single period of abuse as required under the continuous sexual abuse statute. We do not agree.

Section 21.02(b) of the Penal Code sets out the offense of continuous sexual abuse of a child as follows:

> (b)  A person commits an offense if:
>
> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and
>
> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense.

–4–

TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2017). Subsection (c) lists the offenses that may be used as elements of an offense under subsection (b), and includes aggravated sexual assault under Section 22.021 and indecency with a child under Section 21.11(a)(1), if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child. *Id.* §§ (c)(2), (4). Subsection (d) requires that the jury agree that at least two sexual acts occurred during a period that is thirty or more days in duration even if the jury lacks unanimity as to each of the particular sexual acts or their time of occurrence. *Id.* § (d).

In interpreting statutes, this Court must "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Price v. State*, 434 S.W.3d 601, 605 (Tex. Crim. App. 2014). Toward that end, we must focus our "attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment." *Byrant v. State*, 391 S.W.3d 86, 92 (Tex. Crim. App. 2012) (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). We presume that the legislature intended for the entire statutory scheme to be effective. *Price*, 434 S.W.3d at 605. When statutory language is clear and unambiguous, we give effect to its plain meaning unless to do so would lead to absurd consequences. *Id.* Ambiguity exists when the statutory language may be understood by reasonably well-informed persons in two or more different senses; conversely, a statute is unambiguous when it permits only one reasonable understanding. *Id.*

Having reviewed the plain language of Section 21.02(b), we conclude that it permits only one reasonable interpretation of what constitutes the "period" during which the repeated acts of sexual abuse must have occurred. The statute does not place any specific limitation on the amount of time in which the repeated acts of sexual abuse must end. There is no ambiguity in the statute's language requiring that the repeated acts of sexual abuse must have occurred over a period that is 30 or more days in duration. Nor is there any ambiguity in the statute's language

setting forth the requirement that the repeated acts of sexual abuse must have occurred before the child turned fourteen years old. The statute's use of "period" simply speaks in terms of the minimum length of time in which a sexually abusive relationship with a young child must exist before a defendant can be prosecuted under this statute. It does not attempt to define the required frequency or temporal proximity of the prohibited sexual acts. Appellant's argument that "[I]n specifying "a period," the legislature required the offense conduct to transpire during one continuous period," would require this Court to presume that the legislature intended to define and control this type of sexually abusive behavior by a particular frequency or temporal standard. This interpretation is not supported by the statute's plain language. *See Wilson v. State*, 448 S.W.3d 418, 424 (Tex. Crim. App. 2014) (evidence of six voicemail messages left over a period of ten months supported conviction for telephone harassment because although the statute required "repeated" communications, it did not require that they occur with any particular frequency or temporal proximity from one to another). We overrule appellant's first issue.

## II. Sufficiency of Evidence – Indecency with a Child, Specific Intent

In appellant's second issue, he contends that the evidence is insufficient to prove the predicate offense of indecency with a child against ZG because it failed to show that appellant acted with sexual intent when his hand touched ZG's vaginal area. We disagree.

In reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict, and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 313 (1979); *Brooks v. State,* 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We assume the fact finder resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App.

2007). We defer to the trier of fact's determinations of witness credibility and the weight to be given their testimony. *Brooks,* 323 S.W.3d at 899.

To establish the offense of indecency with a child by contact, the State had to demonstrate that appellant engaged in sexual contact with ZG with the intent to arouse or gratify appellant's sexual desire. TEX. PENAL CODE ANN. § 21.11(c)(1) (West Supp. 2017). The specific intent required for the offense of indecency with a child may be inferred from a defendant's conduct, his remarks, and all of the surrounding circumstances. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981). The uncorroborated testimony of a child sexual abuse victim is sufficient to support a conviction for indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2017); *Martinez v. State*, 178 S.W.3d 806, 814 (Tex. Crim. App. 2005) (noting that article 38.07 "deals with the sufficiency of evidence required to sustain a conviction for" certain sexual offenses). An oral expression of intent is not required; the conduct itself is sufficient to infer intent. *Connell v. State*, 233 S.W.3d 460, 467 (Tex. App.—Fort Worth 2007, no pet.).

ZG testified that when appellant walked by her in the hallway he was swinging his arms and touched her vaginal area with his hand. She testified that she tried to get out of his way by pushing herself against the wall. In addition, ZG's testimony shows a pattern of sexual conduct by appellant towards ZG over a period of six years. This conduct included appellant requiring ZG to perform oral sex; appellant rubbing ZG's legs and sliding his hand toward her vaginal area; appellant placing his head on ZG's legs near her vaginal area while caressing her legs; appellant requiring ZG to greet him with a kiss on the lips while forcing his tongue into her mouth; and appellant giving ZG passionate hugs in which he would caress her and put his hand on her lower back near her buttocks. In addition, the jury heard the testimony from ZG's mother

regarding the outcry ZG made to her when she was seven years old about appellant touching her and saw that ZG's vaginal area was irritated.

We conclude that ZG's testimony that appellant touched her vaginal area with his hand as he walked by her in the hall while she tried to get out of his way, was sufficient for a rational trier of fact to infer the element of intent to arouse or gratify sexual desire. Even if this alone were insufficient for a finding of intent, the fact that on numerous occasions over the past six years appellant's conduct towards ZG was clearly sexual in nature, thwarted only by ZG's attempts to push appellant away, is additional evidence of intent. *See Morgan v. State*, 692 S.W.2d 877, 881 (Tex. Crim. App. 1985) (finding extraneous offense that defendant had touched complainant in same manner on previous occasions had "indubitable probative value" of defendant's intent"); *Navarro v. State,* 241 S.W.3d 77 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (considering evidence that appellant had committed same conduct on other occasions as additional evidence of intent); *Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd) (same). Appellant's second issue is overruled.

### III.    Admission of Foreign Language Document

In his final three issues, appellant contends that the trial court erred by allowing the State to publish an un-translated foreign language document because the State failed to comply with article 38.30 of the Texas Code of Criminal Procedure or the provisions of Rule 1009(a) of the Texas Rules of Evidence. The document at issue is a letter appellant wrote in Spanish to his wife, Nora Garcia, while he was in jail awaiting trial. The record shows that Garcia required the services of an interpreter at trial and that prior to her testimony, a Spanish translator was sworn in to translate her testimony. During her testimony, Garcia identified State's Exhibit 4 as a letter written to her by appellant. The State then offered a highlighted portion of the letter into evidence. No written English translation of the letter was offered. After taking the witness on

voir dire, appellant made several objections to the evidence, including "best evidence" because "It could have been translated," as well as the fact that it was inadmissible because it "is a letter in Spanish" and "It's not something the jury can read." Following appellant's objections, the trial court admitted the letter into evidence for record purposes only and allowed the State to publish the letter during Garcia's testimony by having Garcia read the letter to the jury. No objection was made to the interpreter's translation of the letter as it was read by the witness.

On appeal, appellant argues that there are only two ways in which foreign language evidence may be admitted into evidence – by relying on article 38.30 of the Texas Code of Criminal Procedure or by complying with Rule 1009(a) of the Texas Rules of Evidence. Since no translated document was offered into evidence, Rule 1009(a) is clearly inapplicable.[2] Regarding the State's compliance with article 38.30, appellant states, "While a professional translator interpreted the testimony given by NG, in the form of her reading Appellant's letter to her to the jury, the translator did not interpret the letter, as required under Article 38.30." Appellant's contention is without merit.

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016). A trial court's decision will be upheld when that decision is within the zone of reasonable disagreement. *Id.* We afford a trial court wide discretion in determining the adequacy of interpretive services. *Linton v. State*, 275 S.W.3d 493, 500 (Tex. Crim. App. 2009). The translation must be "true." That is, it must be accurate, but it need not be "perfect." *Id.* at 501–02. "The ultimate question

---

[2] Rule 1009(A) applies when a party offers a written translation of a foreign language document. It requires that the written translation be coupled with an affidavit by a qualified translator setting forth the translator's qualifications and certifying that the translation is fair and accurate and that the translation be provided forty-five days in advance. TEX. R. EVID. 1009(a).

is whether any inadequacy in the interpretation made the trial 'fundamentally unfair.' *Id.* at 503 & n. 26 (quoting *United States v. Huang*, 960 F.2d 1128, 1136 (2d Cir. 1992).

In this case, the letter itself was never entered into evidence before the jury. Rather, evidence regarding the content of the letter was presented through the testimony of Garcia, the person to whom the letter was written. Garcia's testimony was translated by an identified, officially sworn, licensed interpreter. No objection was made to the qualifications of the interpreter. The El Paso Court of Appeals has held that the requirements of article 38.30 of the Texas Code of Criminal Procedure are met when "the interpreter was positively identified, qualified, officially sworn, and subjected to cross-examination." *Peralta v. State*, 338 S.W.3d 598, 605 (Tex. App.—El Paso 2014, no pet.) (citing *Flores v. State*, 299 S.W.3d 843, 856 (Tex. App.—El Paso 2009, pet. ref'd).

Appellant cites *Leal v. State*, 782 S.W.2d 844 (Tex. Crim. App. 1989) in support of his contention that article 38.30 requires a professional translator to interpret the letter itself, rather than translate the testimony of a witness who read the letter to the jury. Appellant's reliance on *Leal* is misplaced. In *Leal*, the Court of Criminal Appeals determined that the admission of a recorded conversation in a foreign language is analogous to testimony by a non-English speaker such that the safeguards of article 38.30 apply. *Id.* at 849. The court determined that because an interpreter must be sworn to translate the recorded conversation, the trial court erred in admitting the tape recording into evidence with an unsworn translation. *Id.* at 849–50. In *Leal*, there was no positive identification of who actually translated the conversation; there was no evidence that they were qualified to make the translation; and no one was sworn by the trial court as an interpreter. *Id.* at 849. Further, the interpreter was not called to the stand so the accuracy of the translation could be subject to cross-examination. *Id.* *Leal* does not address appellant's claim, it

merely stands for the notion that proper safeguards should be applied to ensure an accurate and reliable translation is provided to the jury. *Peralta*, 338 S.W.3d at 606.

Appellant does not challenge the quality or accuracy of the translation of Garcia's testimony as it related to the letter. In fact, appellant testified during trial on his own behalf and confirmed that he sent the letter to his wife. During his testimony, he read a portion of the letter out loud and explained to the jury what he meant by what he wrote in the letter. At no time, did he dispute the interpreter's translation of the letter as it was read by his wife to the jury.

We conclude that the trial court did not err in failing to require the interpreter to translate the letter itself separately from the translation she provided to the jury during the witness's testimony when the letter was read to the jury. Appellant's third, fourth and fifth issues are overruled.

## CONCLUSION

We affirm the trial court's judgments.

/David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
161280F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JOSE M. DOMINGUEZ, Appellant

No. 05-16-01280-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F15-31011-V.
Opinion delivered by Justice Evans, Justices Francis and Boatright participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 31st day of January, 2018.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOSE M. DOMINGUEZ, Appellant

No. 05-16-01281-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F15-31009-V.
Opinion delivered by Justice Evans, Justices Francis and Boatright participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 31st day of January, 2018.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOSE M. DOMINGUEZ, Appellant

No. 05-16-01282-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F15-30988-V.
Opinion delivered by Justice Evans, Justices Francis and Boatright participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 31st day of January, 2018.